United States District Court
Middle District of Florida
Jacksonville Division

**DENNIS JOHNSTON,**

 *Plaintiff,*

v.            No. 3:20-cv-539-MMH-PDB

**NORTH FLORIDA REFORESTATION
SERVICES, INC., & ROBERTS SITE
DEVELOPMENT, INC.,**

 *Defendants.*

## Report & Recommendation[1]

In this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, the parties move under *Lynn's Food Stores, Inc., v. United States ex rel. U.S. Department of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)*,* for approval of a settlement and dismissal with prejudice. Doc. 55.

## Background

Dennis Johnston filed this action in June 2020, bringing a single claim for an alleged violation of the FLSA by failing to pay overtime compensation.

---

[1]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

Doc. 1. In the complaint, he alleges the following facts. Defendants North Florida Reforestation Services, Inc. (NFRS) and Roberts Site Development, Inc., operate site-development-preparation companies. They employed him from January 2013 to May 2020, and his work was essential to their business. Their annual gross revenue exceeded $500,000. They have a uniform, companywide policy of paying only the usual hourly rate for overtime hours. They knowingly and willfully failed to pay him and other employees increased wages for overtime hours, including for time spent working in both their locations, driving between their properties and jobsites, and cleaning machinery and vehicles. They failed to consult with the Department of Labor, counsel, or an accountant to determine whether their pay practices complied with the FLSA. They had no basis for their pay practices. Doc. 1 at ¶¶ 4–5, 15, 20, 28, 31, 33, 40–41, 43–44, 55–58.

After Johnston filed the complaint, three opt-in plaintiffs—Larry Brooks, David Silcox, and Jason Nash—filed written consents to join the action.[2] Docs. 6, 12, 39.

The defendants answered the complaint in August 2020. Docs. 20, 21. They admit that they operate site-development companies (although NFRS also denies this allegation elsewhere). They admit that Johnston was a covered

---

[2]The parties reached the proposed settlement without the Court ruling on the motion to certify a collective action (Doc. 40). *See* Doc. 49 (notice of settlement). Under the FLSA's opt-in provision, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). That language "supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required." *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018). An opt-in plaintiff must be similarly situated to the named plaintiff, but "the opt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them." *Id.* Under this authority, the opt-in plaintiffs here are party plaintiffs even without a ruling on the class-action-certification motion.

employee within the meaning of the FLSA. They admit that they were "enterprises engaged in commerce" within the meaning of the FLSA. And they admit that Johnston fulfilled all conditions precedent before filing the action or those conditions have been waived. Doc. 20 ¶¶ 1–3, 6–7, 14, 22, 30, 32–33, 47, 48–50, 59; Doc. 21 ¶¶ 1–3, 6–7, 14, 22, 30, 32–33, 47–50, 59.

The defendants deny that they engaged in interstate commerce. They deny that they engaged in commerce or the production of goods for commerce as defined in the FLSA. They deny that they jointly employed Johnston and other potential opt-in plaintiffs. They deny that they were employers within the meaning of the FLSA. They deny that they knowingly and willfully failed to pay Johnston and others. They deny that they committed a willful and unlawful violation of the FLSA. The deny that Johnston's work was directly essential to their business. They deny that they failed to properly pay Johnston and others for overtime labor. They deny that a policy of denying overtime wages is illegal and companywide. They deny that they failed to consult with the Department of Labor, counsel, or an accountant to determine whether their pay practices complied with the FLSA. And they deny that they lacked a good-faith basis for their pay practices. Doc. 20 ¶¶ 10–13, 26–29, 31, 39, 43, 53, 55, 56–58; Doc. 21 ¶¶ 10–13, 26–29, 31, 39, 43, 53, 55–58.

The defendants raise six defenses: (1) Johnston's claim is barred by the Portal-to-Portal Act, 29 U.S.C. § 260, because any wrongful acts or omissions were done in good faith and with reasonable grounds for believing that the acts or omissions complied with the FLSA; (2) any claim arising outside of the statute of limitations is barred; (3) any failure to pay overtime was the result of reliance on administrative practice or enforcement policy; (4) Johnston has received all payment to which he is entitled; (5) any uncompensated overtime

that cannot be recorded precisely is de minimis and may be properly disregarded for payroll purposes; and (6) any claim for overtime compensation must be offset by any premium compensation, overpayments, bonuses, advances, commission, or other job-related benefits. Doc. 20 ¶¶ 61, 62, 63, 64, 65, 66; Doc. 21 ¶¶ 61–66. Additionally, NFRS asserts the agricultural exemption. Doc. 20 ¶ 67.

Before Silcox and Nash joined the action, Johnston and Brooks answered the Court's interrogatories. Docs. 10, 11. Johnston represents the following facts. The defendants employed him from January 2013 to May 15, 2020. His immediate supervisors were Jesus Garcia, Terri Doughman, Mike Gordy, and Charlie Ambrose. His scheduled work period varied from between 5:30 a.m. to 6:30 or 8:00 p.m. and 6:30 a.m. to 5:00 or 7:00 p.m. He was a laborer/equipment operator, and his duties included running "a specific piece of equipment on the jobsite or whatever [he] was asked to do at any jobsite." His regular hourly pay was $16.00. The defendants owe him $21,806.40 in unliquidated damages and $43,612.80 in liquidated damages. He orally complained about alleged FLSA violations several times before he was terminated, and his lawyer filed the complaint shortly after. His supervisor Ambrose responded that "if [he didn't] like it to go find another job." He has pay records but not time records. Doc. 10 ¶¶ 1–10.

Brooks represents the following facts. The defendants employed him from April 10, 2019, to May 12, 2020. His immediate supervisors were Garcia, Doughman, Gordy, and Ambrose. His scheduled work period varied from between 5:30 a.m. to 6:30 or 8:00 p.m. and 6:30 a.m. to 5:00 or 7:00 p.m., but there was no time clock, supervisors would automatically record that employees left at 5:00 or 5:30 p.m. if they did not see them leave, and employees

were docked thirty minutes for lunch even though they usually took no lunch breaks. He was a laborer/equipment operator, and his duties included running "a specific piece of equipment on the jobsite or whatever [he] was asked to do at any jobsite." His regular hourly pay was $17.00. The defendants owe him $8,575.65 in unliquidated damages and $17,151.30 in liquidated damages. His lawyer filed the complaint. He has pay records but not time records. Doc. 11 ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10.

In August 2020, the defendants filed verified summaries of Johnston's, Brooks's, and Silcox's hours worked and wages paid. (Nash joined the action later.) The defendants describe Johnston's work and pay in detail. According to them, Johnston worked for Roberts from June 2017 to May 2020. Over his employment, his hourly pay rate increased from $13.00 to $16.00. His weekly hours varied. If he worked more than forty hours in a week, he was paid at one and a half times his usual rate for each additional hour. He submitted a driving log with his timesheet, and he was paid separately for hours spent driving. He also worked for NFRS sporadically, beginning in August 2017. He was paid $13.00 an hour, including when he worked more than forty hours in a week, "in accordance with the agricultural exemption of the FLSA." Doc. 22 at 1–6.

The defendants explain Brooks and Silcox were paid "consistent with the same rationale" as Johnston. They explain Brooks never worked as a driver. Doc. 22 at 3.

In August 2021, the parties settled. Doc. 49. In November 2021, they filed the current motion for approval of the settlement, Doc. 55, and the settlement agreements, Doc. 55-1.

## Motion

The defendants agree to pay Johnston $10,500 in wages and $10,500 in liquidated damages; Brooks $3,500 in wages and $3,500 in liquidated damages; Silcox $5,500 in wages and $5,500 in liquidated damages; and Nash $3,500 in wages and $3,500 in liquidated damages. Doc. 55 at 2; Doc. 55-1 at 2, 8, 14, 20. The parties explain they negotiated attorney's fees separately, Doc. 55 at 3–4, and the defendants agree to pay the plaintiffs' counsel $34,000 ($8,500 for each plaintiff), Doc. 55-1 at 2, 8, 14, 20.

The parties assert that disputed issues are present, including whether the plaintiffs are entitled to unpaid wages, the computation of wages, and damages. Doc. 55 at 5. The parties describe the efforts involved in settling—including written discovery, depositions, mediation, and multiple settlement discussions—and agree the settlement is "a fair and full resolution" of the claims. Doc. 55 at 3. They consider the settlement "a reasonable compromise" and ask the Court to approve it and dismiss the case with prejudice. Doc. 55 at 5.

## Authority

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages for up to two years or, if the employer intentionally

violated the law, for up to three years, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260); and attorney's fees and costs, 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit placed limits on the ability of private parties to settle a FLSA case. *See Lynn's Food*, 679 F.2d at 1353–55 (establishing the limits); *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306–07 (11th Cir. 2013) (describing *Lynn's Food*, observing the case involved employees and their current employer, and holding *Lynn's Food* also applies to cases between former employers and employees). Parties must present their agreement to the court, and the court must scrutinize the agreement for fairness. *Nall*, 723 F.3d at 1306–07.

To approve a settlement, a court must find the settlement is fair, adequate, reasonable, and not the product of collusion. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Factors pertinent to this finding include whether there was collusion or fraud; the complexity, expense, and likely duration of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiffs' success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's Food*, 679 F.2d at 1355.

The "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349,

7

351 (11th Cir. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

## Analysis

Considering the parties' representations and a review of the complaint, the answers and defenses, the answers to the Court's interrogatories, the verified summaries, and the motion to approve the settlement agreement, the agreement is fair, adequate, reasonable, and not the product of collusion.

The parties are represented by counsel. There is no stated or apparent collusion or fraud. Disputed issues are present. Resolving the disputes without settlement would require costly discovery and continued litigation. The plaintiffs would risk receiving nothing. The agreement includes compensation for both unpaid wages and liquidated damages.

The motion does not ask the Court to retain jurisdiction to enforce the agreement. The agreement contains nothing commonly found objectionable.[3] Approval is warranted.

---

[3] For example, some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g.*, *Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-CEM-TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014). Some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g.*, *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-cv-88 (WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013). Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness, and reasonableness of the compromise cannot be determined. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

On attorney's fees and costs, given the parties' representation they agreed on the fees separately from the amounts to the employees, the Court need not undertake a lodestar review. Moreover, the fees appear reasonable considering the work completed, including written discovery, depositions, mediation, and multiple settlement discussions.

## Consent

To expedite the resolution of the current motion, the parties still have an opportunity to consent to the undersigned conducting the remaining proceedings in this action, including entry of judgment. To do so, the parties must jointly execute and file the consent form attached to this report and recommendation (using a single form rather than separate forms). Of course, the parties remain free to withhold consent without adverse substantive consequences. *See* Fed. R. Civ. P. 73(b)(2).

## Recommendation

I recommend:

1. **granting** the parties' motion for approval of the settlement, Doc. 55, and approving the settlement as a fair and reasonable resolution of disputed issues;

2. **dismissing** the case with prejudice; and

3. **directing** the Clerk of Court to close the file.

**Entered** in Jacksonville, Florida, on December 23, 2021.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

9

Attachment: AO Form 85